SYLLABUS

This syllabus is not part of the Court's opinion.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Court.  In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Bennie Anderson (A-15/16-20) (084365)**

**Argued March 30, 2021 -- Decided August 11, 2021**

**LaVECCHIA, J., writing for the Court.**

In this appeal, the Court considers whether the forfeiture of defendant Bennie Anderson's right to a public pension violates his constitutional right to be free of excessive fines.

Defendant was employed by Jersey City in the Tax Assessor's office.  His position gave him the opportunity to alter property tax descriptions without the property owner filing a formal application with the Zoning Board.  In December 2012, defendant engaged in an illicit transaction where he accepted a $300 bribe in exchange for altering the tax description of a property from a two-unit dwelling to a three-unit dwelling.  Defendant retired from his position in March 2017 and was granted an early service retirement pension.  In November 2017, defendant pled guilty in federal court to violating 18 U.S.C. § 1951(a), interference with commerce by extortion under color of official right.  Defendant was sentenced to two years of probation and ordered to pay a fine.  Based on defendant's conviction, the Employees' Retirement System of Jersey City reduced his pension.

The State filed an action in state court to compel the total forfeiture of defendant's pension pursuant to N.J.S.A. 43:1-3.1.  The trial court entered summary judgment for the State, finding that the forfeiture of defendant's pension did not implicate the constitutional prohibitions against excessive fines because the forfeiture of pension benefits did not constitute a fine.  The Appellate Division affirmed the grant of summary judgment to the State, but on different grounds.  463 N.J. Super. 168, 186 (App. Div. 2020).  The Appellate Division concluded that the forfeiture of defendant's pension was a fine, but that requiring defendant to forfeit his pension was not excessive.  Id. at 172-73.

The Court granted certification.  244 N.J. 288 (2020).

**HELD:**  The forfeiture of defendant's pension under N.J.S.A. 43:1-3.1 does not constitute a fine for purposes of an excessive-fine analysis under the Federal or State Constitutions.  Because the forfeiture is not a fine, the Court does not reach the constitutional analysis for excessiveness.

1

1.  The Eighth Amendment of the United States Constitution and Article I, Paragraph 12 of the New Jersey Constitution provide in relevant part that excessive fines shall not be imposed.  Before determining whether a "fine" is "excessive," a court first determines whether the government action at issue is a "fine."  United States v. Bajakajian, 524 U.S. 321, 334 (1998).  Forfeitures -- payments in kind -- are "fines" if they constitute punishment for an offense and involve turning over property of some kind that once belonged to the defendant.  In cases in which the status of the forfeited asset as "property" is disputed, courts resolve the dispute by examining state law.  The analysis in the instant matter therefore begins by asking whether, under New Jersey law, defendant had a property right in his pension such that the forfeiture of that "right" is a "fine" within the meaning of the Eighth Amendment or the State Constitution.  (pp. 13-17)

2.  For many years, the seminal case on pension forfeiture was Uricoli v. Board of Trustees, Police & Firemen's Retirement System, in which the Court determined that an inflexible forfeiture rule was not clearly expressed in the language of the pension statute.  See 91 N.J. 62, 77 (1982).  The Court identified factors to consider and balance when determining whether to impose a pension forfeiture, in the absence of any perceived legislative intent for mandatory forfeiture.  Id. at 77-78.  (pp. 17-18)

3.  In 2007, the Legislature added N.J.S.A. 43:1-3.1 -- the statute pursuant to which the State seeks forfeiture of defendant's pension.  N.J.S.A. 43:1-3.1(a) provides that a public employee "who is convicted of any crime set forth in subsection (b) of this section, or of a substantially similar offense under the laws of another state or the United States . . . shall forfeit all of the pension or retirement benefit earned."  (emphasis added).  N.J.S.A. 43:1-3.1 was in effect in 2012 when defendant's offense occurred.  Also in effect at that time was N.J.S.A. 43:1-3(a), which provides that "[t]he receipt of a public pension or retirement benefit is hereby expressly conditioned upon the rendering of honorable service by a public officer or employee."  Subsection (b) of N.J.S.A. 43:1-3 empowers boards of trustees to order full or partial pension forfeiture upon dishonorable service, and subsection (c) lists factors -- similar to the Uricoli factors -- for determining whether misconduct breached the honorable service requirement.  (pp. 18-21)

4.  Section 3 makes honorable service a condition of a right to a pension, and section 3.1 makes forfeiture of any right to a pension the result when honorable service is not provided due to conviction of an enumerated offense.  The plain language of section 3.1 expresses an unambiguous legislative intent to make the commission of offenses enumerated in subsection (b) the basis for mandatory and absolute pension forfeiture.  The factors for consideration contained in N.J.S.A. 43:1-3(c), which resemble those set forth in Uricoli, apply to public employee misconduct raising honorable service questions outside of circumstances involving convictions for which section 3.1 requires mandatory and absolute forfeiture.  As a result of the adoption of section 3.1, no longer can the Court conclude, as it did in Uricoli, that the Legislature did not, unequivocally and categorically, condition the receipt of a pension on the rendering of uniformly honorable

2

service.  Defendant committed his offense after the 2007 amendment to the pension laws was enacted and, thus, by the time he committed his offense, the Legislature had eliminated all doubt as to its intent that there be a certain category of offenses the commission of which precludes receipt of a publicly funded pension in New Jersey. Defendant's federal conviction is an analogue to the state offenses listed and, as per the statute's wording, qualifies as the basis for the State's application.  (pp. 22-23)

5.  Because forfeiture of a pension is automatic and mandatory upon the commission of certain offenses under section 3.1, it is clear that defendant did not possess a property right in his pension protected by the Federal or State Constitutions.  The Legislature has established that the pre-condition of honorable service to the statutory right is not met when a conviction for an enumerated offense occurs.  In such a case, the conditional quasi-contractual right to receive a public pension has not become the "property" of the employee, so there is no fine for purposes of the Bajakajian analysis.  And as the trial court noted, New Jersey's treatment of public pensions as quasi-contractual rights rooted in statute, and not as property rights, is consistent with the majority of courts to have addressed this issue and have similarly denied excessive-fine claims on the basis of the first prong of the analysis.  Family law cases that have, in that setting, treated pensions as property subject to equitable distribution do not and cannot convert a public pension into a nonforfeitable property right.  Because the Court concludes that the forfeiture worked by operation of N.J.S.A. 43:1-3.1 is not a fine, the Court does not reach a constitutional analysis for excessiveness.  The Court therefore declines to review and vacates the portion the Appellate Division's opinion analyzing excessiveness.  (pp. 24-26)

**AFFIRMED AS MODIFIED.**

**JUSTICE ALBIN, dissenting,** would find that Anderson had a property interest in his pension and that the complete forfeiture of his pension violates the Eighth Amendment's Excessive Fines Clause.  Explaining that a contract may create a property right and that pensions are considered property subject to equitable distribution in family law jurisprudence, Justice Albin asserts that a pension should not constitute property for one purpose but not another.  Justice Albin stresses that Anderson's conviction, the condition subsequent that triggered the forfeiture, did not arise until after his pension had vested.  Justice Albin concludes that the punitive forfeiture of Anderson's pension -- deferred compensation accumulated over thirty-eight and a half years of public employment -- is a fine for Eighth Amendment purposes.  Justice Albin further submits that the fine was excessive -- that the forfeiture of defendant's entire pension valued at over one million dollars was "grossly disproportional" to defendant's isolated crime of accepting a $300 bribe.

**JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE LaVECCHIA's opinion.  JUSTICE ALBIN filed a dissent. CHIEF JUSTICE RABNER did not participate.**

3

# SUPREME COURT OF NEW JERSEY
## A-15/16 September Term 2020
## 084365

State of New Jersey,

Plaintiff-Respondent/Cross-Appellant,

v.

Bennie Anderson,

Defendant-Appellant/Cross-Respondent.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
463 N.J. Super. 168 (App. Div. 2020).

| Argued | Decided |
|---|---|
| March 30, 2021 | August 11, 2021 |

Nirmalan Nagulendran argued the cause for
appellant/cross-respondent (Miller, Meyerson & Corbo,
attorneys; Nirmalan Nagulendran and Gerald D. Miller,
on the briefs).

Lauren Bonfiglio, Deputy Attorney General, argued the
cause for respondent/cross-appellant (Andrew J. Bruck,
Acting Attorney General, attorney; Steven K. Cuttonaro,
Deputy Attorney General, of counsel and on the briefs).

Alexander Shalom argued the cause for amici curiae
American Civil Liberties Union of New Jersey and
Association of Criminal Defense Lawyers of New Jersey
(American Civil Liberties Union of New Jersey
Foundation and Whipple Azzarello, attorneys; Alexander

1

Shalom, Jeanne LoCicero, and William J. Munoz, on the
brief).

Anthony F. DellaPelle submitted a brief on behalf of
amicus curiae the Institute for Justice (McKirdy, Riskin,
Olson & DellaPelle and Institute for Justice, attorneys;
Anthony F. DellaPelle, Allan C. Zhang, Wesley Hottot,
of the Washington and Texas bars, admitted pro hac vice,
and Jaba Tsitsuashvili, of the California and District of
Columbia bars, admitted pro hac vice, on the brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

Defendant Bennie Anderson, a former employee in the tax assessor's
office in the City of Jersey City (the City or Jersey City), was convicted of a
federal offense touching upon his position of public employment.  Based on
that conviction, the State of New Jersey filed an action in state court pursuant
to N.J.S.A. 43:1-3.1 to compel the forfeiture of defendant's public pension.
This appeal concerns defendant's claim that forfeiture of his right to a public
pension violates his constitutional right to be free of excessive fines.

The trial court and the Appellate Division brought the appropriate
structure to their analyses of defendant's excessive-fine claim, addressing first
whether the penalty imposed was a "fine," and if so, whether the fine was
excessive.  The trial court's analysis ended at the first step:  the court found
that no fine was exacted because honorable service is a condition of eligibility
for the pension benefit, and one could not lose that to which one did not have a

2

right to begin with. The Appellate Division disagreed with the trial court's analysis of the first inquiry but affirmed the grant of summary judgment to the State because it concluded that the fine to which defendant was subjected was not excessive. Accordingly, the Appellate Division upheld the pension forfeiture.

We granted defendant's petition for certification, 244 N.J. 288 (2020), in which defendant contends that the Appellate Division applied an inappropriate analysis for excessiveness, and the State's cross-petition, 244 N.J. 288, 288-89 (2020), in which the State argues that defendant's forfeiture of his public pension does not constitute a fine.

We now affirm the judgment upholding the forfeiture of defendant's pension, but our reasoning differs from that of the Appellate Division. We conclude, as did the trial court, that defendant was not subjected to a fine. Accordingly, our conclusion on that first inquiry eliminates the need to assess whether the forfeiture constitutes an excessive fine. As a result, we need not review or express an opinion on the test for excessiveness employed by the Appellate Division.

3

I.

A.

Defendant was employed by Jersey City in the Tax Assessor's office. His position gave defendant the opportunity to alter property tax descriptions without the property owner filing a formal application with the Zoning Board. That power of alteration included the significant ability to alter the number of housing units permitted on a parcel of property, which is what led to the forfeiture issue before us.

During the period from December 9 to December 13, 2012, defendant and an individual cooperating with federal law enforcement engaged in an illicit transaction. The record from defendant's federal conviction was presented in this forfeiture action. That record reveals that the individual, "a Jersey City property owner whose property was zoned for a two-unit dwelling," sought to establish and exploit a back channel with defendant to have property rezoned as a three-unit dwelling. The individual contacted defendant on December 9, and on December 12, defendant agreed to rezone the property in exchange for a $300 bribe. On December 13, 2012, defendant told the individual that he had rezoned the property and accepted $300 in cash.

Defendant retired from his position in the first quarter of 2017 having served in the government of Jersey City for thirty-eight and one-half years.

4

His public position and years of service allowed him to apply for a public pension provided and administered locally by the City. On March 1 of that year, he was "granted an early service retirement pension of $60,173.67" per year.

Later that year, the United States Attorney's Office for the District of New Jersey charged defendant with violating 18 U.S.C. § 1951(a), interference with commerce by extortion under color of official right,[1] a charge that carried a maximum prison sentence of twenty years and a maximum fine that was "the greatest of: (1) $250,000; (2) twice the gross amount of any pecuniary gain that any persons derived from the offense; or (3) twice the gross amount of any pecuniary loss sustained by any victims of the offense," plus interest. Defendant and the federal government entered into a plea agreement on June 30, 2017, whereby defendant pled guilty to one count of violating § 1951(a), and he stipulated to the above-recited facts. Defendant entered a formal plea on November 21, 2017, and on March 5, 2018, the United States District Court for the District of New Jersey sentenced defendant to two years of probation with five months of home detention and imposed a fine in the amount of $3,000 and a special assessment of $100.

---

[1] Although the charging document provided by the State in the record is undated, the State represents that this criminal information was filed on November 21, 2017, with defendant's plea form.

5

B.

With respect to defendant's pension, which he received through the locally administered pension fund for public employees of Jersey City, the following facts and procedural history are pertinent.

Between the conclusion of defendant's federal prosecution and the institution of the litigation that led to the instant appeal, the Board of Trustees of the Employees' Retirement System of Jersey City held a hearing on defendant's pension status. It resolved, on account of defendant's federal conviction, to reduce his pension to $47,918.76 per year.

The State then took action against defendant based on the prescriptions in N.J.S.A. 43:1-3.1. On March 26, 2019, the State commenced the instant action by way of "verified complaint in lieu of prerogative writ seeking forfeiture of public office and position, permanent disqualification from any position of public honor, trust, or profit, and forfeiture of pension or retirement benefits." The complaint sought total forfeiture of defendant's pension pursuant to N.J.S.A. 43:1-3.1.[2]

---

[2] According to the State, the federal offense of which defendant was convicted was substantially similar to the following offenses listed in N.J.S.A. 43:1-3.1: theft by extortion (N.J.S.A. 2C:20-5), commercial bribery (N.J.S.A. 2C:21-10), bribery in official matters (N.J.S.A. 2C:27-2), acceptance or receipt of unlawful benefit by public servant for official behavior (N.J.S.A. 2C:27-10), tampering with public records or information (N.J.S.A. 2C:28-7), and official

6

The next day, the State applied for an order to show cause to dispose of the matter "as a summary proceeding" and to require defendant to show cause "why summary judgment should not be entered." The trial court granted the application to proceed summarily.

Defendant filed an answer on May 7, 2019, admitting most of the allegations in the State's complaint but denying that his federal conviction was for a crime substantially similar to an enumerated state offense in N.J.S.A. 43:1-3.1. Defendant also protested that "the proposed forfeiture of Bennie Anderson's entire pension under these facts would be an excessive fine" within the meaning of the Eighth Amendment of the United States Constitution and Article I, Paragraph 12 of the New Jersey Constitution.[3]

The Honorable Mary Jacobson, A.J.S.C., heard argument on the matter and entered judgment for the State. The court focused on the Legislature's 2007 amendment to the pension laws, L. 2007, c. 49, § 2, codified at N.J.S.A. 43:1-3.1. The court determined that the 2007 amendment eliminated judicial discretion in certain circumstances by calling for mandatory pension forfeiture

---

misconduct (N.J.S.A. 2C:30-2). Thus, the State considered N.J.S.A. 43:1-3.1(a)'s forfeiture requirement applicable to defendant.

[3] Defendant also argued that "[t]he State of New Jersey is estopped from seeking the forfeiture of Bennie Anderson's entire pension." That argument is not part of this appeal.

for the commission of identified offenses touching on or involving a public office, position, or employment, "to preclude individuals who have once violated the public trust from having a second opportunity to do so," and to ensure "there should be no stigma of conviction of a crime of dishonesty among public employees." The court reviewed this Court's earlier decision in Uricoli v. Board of Trustees, Police & Firemen's Retirement System, 91 N.J. 62 (1982), which found, under the prior statutory law, that the pension laws did not mandate forfeiture and set forth factors for courts to use when exercising their discretion in determining whether to order forfeiture.

However, the trial court found that case law to have been superseded by changes to the statute. The court reasoned from a review of the 2007 amendment and later case law that "the policy in these forfeiture statutes is a harsh response, but . . . it was a harsh response to a problem serious enough to justify its harshness." The court noted that "the forfeiture statute itself codifies a long-standing policy against retention of offenders in government service," and stated further that "the statute reflects a legislative determination governing the standards of conduct to be observed by those who serve the public as a condition to continued employment."

In applying the forfeiture statute to defendant, the trial court further agreed with the State that the federal statute Anderson was convicted of

8

violating was similar enough to the state offenses enumerated in N.J.S.A. 43:1-3.1 to justify entering the order sought by the State.[4]

Addressing defendant's argument that the forfeiture of his pension violated the Excessive Fines Clause of the Eighth Amendment of the United States Constitution, the court determined that "pensions are more of a contractual arrangement between a public employee and the employer," which are "conditioned on honorable service," than they are a property right. Noting that "there was no property right to the pension benefits when there's a breach of the honorable service" condition, the court concluded that, therefore, "forfeiture of the pension benefits does not constitute a payment to the State" or fine. The court reasoned that without a property right at stake, the Excessive Fines Clause was not implicated.

Defendant appealed, and the Appellate Division affirmed the grant of summary judgment to the State, but on different grounds. State v. Anderson, 463 N.J. Super. 168, 186 (App. Div. 2020). The Appellate Division was persuaded that the forfeiture of defendant's pension was a "fine" within the meaning of the constitutional provisions "because he had a property interest in the form of a contractual right to receive pension benefits, despite the fact that

---

[4] As readily acknowledged by the State, defendant's individual contributions toward his pension are returned upon forfeiture.

9

this right was conditioned on his performance of honorable service." Id. at 172. In reaching that decision, the court acknowledged that a majority of other states take a contract-right approach to pension forfeiture and conclude otherwise when confronted with an excessive-fine argument. However, the court was persuaded to adopt its property right analysis and conclude that forfeiture constituted a fine. Importantly however, the Appellate Division did not find that requiring defendant to forfeit his pension was "excessive," for two reasons. Id. at 172-73. The court explained,

> [f]irst, by enacting N.J.S.A. 43:1-3.1, the Legislature expressed its clear intent that such a remedy was appropriate for the precise official misconduct committed by defendant. Second, . . . defendant's taking of a bribe in exchange for a favorable and unjustified change in a property's tax description is a profound breach of the public trust such that a total pension forfeiture is not a disproportionate result.
>
> [Id. at 173.]

## II.

Defendant does not raise a categorical challenge to the forfeiture statute itself. Instead, the parties divide their arguments into parts that address (1) whether forfeiture constitutes a fine and, if so, (2) whether the forfeiture applied here is an excessive fine. We granted leave to appear as friends of the Court to the American Civil Liberties Union of New Jersey (ACLU) and the Association of Criminal Defense Lawyers of New Jersey (ACDL),

10

participating jointly, and to the Institute for Justice. We consider amici's arguments with those of the parties.

A.

On the question whether the pension forfeiture in this appeal constitutes a fine, the State maintains in its cross-petition that there is a quasi-contractual right rooted in the statutory benefit of a pension, but that right is conditional and dependent on honorable service as defined by the statutory pension scheme. According to the State, receipt of a pension was always conditioned on honorable service, and N.J.S.A. 43:1-3.1 has merely clarified when the precondition of honorable service is not satisfied, namely through conviction for any of the enumerated offenses touching on or involving public positions such as defendant's.

The State further maintains that the case law, up to Uricoli, recognized forfeiture to be absolute. With Uricoli determining that the Legislature had not clearly expressed such an absolute requirement, the State argues that Uricoli merely set forth factors for a court to use when forfeiture is discretionary and subject to equitable considerations, which is no longer the case since enactment of the prescriptions of N.J.S.A. 43:1-3.1.

Defendant advances the property right analysis that the Appellate Division found persuasive, reasoning largely by analogy to matrimonial cases

11

addressing the distribution of pension benefits following divorces. The ACLU and ACDL support defendant's position that public employees have property rights in their pensions and that pension forfeitures constitute fines.

## B.

Defendant's petition asserts that the Appellate Division applied an erroneous standard for excessiveness. He maintains that a court must look at factors other than just the nature and impact of the offense. Asserting that the United States Supreme Court "has considered factors other than the offense" in Eighth Amendment cases, he asks this Court to fashion an analysis that considers the impact of the fine on the individual in addition to the offense.

Criticizing the Appellate Division's excessiveness analysis as leaning too much on legislative intent and not enough on the historical roots and purposes of the excessive fines prohibition, amici ACLU and ACDL advance an interpretation that takes into account an individual's means and ability to pay a fine, and argue that even if the Federal Constitution's protection does not take those circumstances into account, then the State Constitution may.

Amicus curiae the Institute for Justice similarly criticizes the Appellate Division's excessiveness analysis. The Institute urges adoption of an individualized analytical method that focuses on the harm actually caused by

12

the defendant and the harshness of the proposed penalty vis-à-vis the defendant, in light of his or her ability to pay.

In countering the position taken by defendant and amici, the State urges that we not reach the issue and, instead, end our analysis by finding that forfeiture as applied here does not constitute a fine.

### III.

Certain standards of review apply in the analysis of this matter. As an appellate court, we approach the review of the grant of summary judgment "de novo, applying the same standard as the trial court." Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019); see also R. 4:46-2(c). We also "review the interpretation of a statute de novo." State v. Pinkston, 233 N.J. 495, 507 (2018). In doing so, "our overarching duty is 'to construe and apply the statute as enacted.'" Daidone v. Buterick Bulkheading, 191 N.J. 557, 565 (2007) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). When a court construes a statute "[t]o interpret [its] meaning and scope . . . , we look for the Legislature's intent." State v. McCray, 243 N.J. 196, 208 (2020). As we often have said, "the statute's plain language" is "the best indicator of intent." In re T.B., 236 N.J. 262, 274 (2019).

Before this Court, defendant advances an as-applied constitutional claim that an order forfeiting the remaining part of his pension violates federal and

13

state constitutional prohibitions against excessive fines. The Eighth Amendment of the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Article I, Paragraph 12 of the New Jersey Constitution provides in relevant part that "[e]xcessive bail shall not be required, excessive fines shall not be imposed, and cruel and unusual punishments shall not be inflicted."[5]

As defendant, the State, the trial court, and Appellate Division all recognize, courts apply the test promulgated by United States v. Bajakajian, 524 U.S. 321 (1998), to determine whether a forfeiture constitutes an excessive, and therefore prohibited, fine. See, e.g., United States v. Bikundi, 926 F.3d 761, 794-96 (D.C. Cir. 2019); United States v. Cheeseman, 600 F.3d 270, 282-85 (3d Cir. 2010). The federal Excessive Fines Clause and Bajakajian's analysis bind the states by operation of the Due Process Clause of the Fourteenth Amendment. Timbs v. Indiana, 586 U.S. ___, 139 S. Ct. 682,

---

[5] As noted by Professor Williams, this first sentence of Paragraph 12 of Article I "was carried over verbatim from Article I, Section 15, of the 1844 Constitution." Robert J. Williams, The New Jersey State Constitution 76 (2012). The excessive-fine provision has not been the subject of much Supreme Court review, and has to date not veered from federal precedent in application. See Davanne Realty v. Edison Township, 408 N.J. Super. 16, 22 (App. Div. 2009) (applying United States Supreme Court precedent), aff'd o.b., 201 N.J. 280, 281 (2010).

14

686-87 (2019); <u>Davanne Realty</u>, 408 N.J. Super. at 22; <u>see also</u> <u>Comm. to Recall Robert Menendez from the Office of U.S. Senator v. Wells</u>, 204 N.J. 79, 131 (2010) ("[T]he U.S. Supreme Court is, of course, the ultimate arbiter of the Federal Constitution.").

The <u>Bajakajian</u> test entails a two-part inquiry. "By its plain language, the Excessive Fines Clause of the Eighth Amendment is violated only if the disputed [forfeiture is] both [a] 'fine[]' and 'excessive.'" <u>Tillman v. Lebanon Cnty. Corr. Facility</u>, 221 F.3d 410, 420 (3d Cir. 2000); <u>cf.</u> <u>Menendez</u>, 204 N.J. at 105 ("Our analysis begins with the plain language of the Federal Constitution.").

Therefore, before determining whether a "fine" is "excessive," a court must first determine whether the government action at issue is a "fine," such as to implicate the Eighth Amendment. <u>See</u> <u>Bajakajian</u>, 524 U.S. at 334 ("Because the forfeiture of respondent's currency constitutes . . . a 'fine' within the meaning of the Excessive Fines Clause, we now turn to the question whether it is 'excessive.'").

"[A]t the time the Constitution was adopted, 'the word "fine" was understood to mean a payment to a sovereign as punishment for some offense.'" <u>Bajakajian</u>, 524 U.S. at 327 (quoting <u>Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.</u>, 492 U.S. 257, 265 (1989)). "The Excessive Fines

15

Clause thus 'limits the government's power to extract payments, whether in cash or in kind, "as punishment for some offense."'" Id. at 328 (quoting Austin v. United States, 509 U.S. 602, 609-10 (1993)). "Forfeitures -- payments in kind -- are thus 'fines' if they constitute punishment for an offense." Ibid. "Implicit in this interpretation of the Excessive Fines Clause is the notion that it applies only when the payment to the government involves turning over 'property' of some kind that once belonged to the defendant." Hopkins v. Okla. Pub. Emps. Ret. Sys., 150 F.3d 1155, 1162 (10th Cir. 1998); see also Bajakajian, 524 U.S. at 328 (explaining that the Clause "limits the government's power to extract payments" from an individual) (emphasis added).

In the typical case, the status of the forfeited asset as "property" is not disputed. E.g., Timbs, 586 U.S. at ___, 139 S. Ct. at 686 (discussing forfeiture of automobile); Bajakajian, 524 U.S. at 324 (discussing forfeiture of currency); Cheeseman, 600 F.3d at 284 (discussing forfeiture of firearms and ammunition). However, in cases in which the status of the asset taken from the individual is disputed, courts resolve the dispute by examining state law. E.g., Hopkins, 150 F.3d at 1162 (applying Oklahoma law); Pub. Emp. Ret. Admin. Comm'n v. Bettencourt, 47 N.E.3d 667, 674-76 (Mass. 2016) (applying Massachusetts law).

16

Thus, as both the trial court and Appellate Division properly recognized, in accordance with the Bajakajian inquiry, the analysis in the instant matter must begin by asking whether, under New Jersey law, defendant had a property right in his pension such that the forfeiture of that "right" is a "fine" within the meaning of the Eighth Amendment or the State Constitution. We will consider defendant's claim that the exaction is constitutionally "excessive" only if we determine that, under New Jersey law, defendant had such a protectible right in the first instance.

IV.

Determination of whether a fine was imposed on defendant requires review of the legal principles governing the forfeiture of public pensions in New Jersey to ascertain the nature of defendant's interest in his pension.

A.

For many years, the seminal case on pension forfeiture was Uricoli, which involved a question of pension forfeiture for a Chief of Police caught fixing a motor vehicle ticket. See 91 N.J. at 65. After he was found guilty of one count of malfeasance in office, Uricoli applied for a pension and was denied based on his failure to render honorable service. Ibid. When administrative appeals brought no relief, our Court granted Uricoli's petition for certification. Id. at 65-66.

17

The Court's decision in Uricoli "reaffirmed the rule that honorable service is an implicit requirement of every public pension statute, whether or not this conditional term appears in the particular statute." Id. at 66. Contrary to the position being taken by the State, however, the Court determined that an inflexible forfeiture rule was not clearly expressed in the language of the pension statute and concluded that the Legislature meant to leave room for judicial discretion. Id. at 77.

To assist courts and administrative bodies with implementation of a flexible test for pension forfeiture, the Court identified factors to be considered and balanced when applying that test to determine the reasonableness of pension forfeiture, in the absence of any perceived legislative intent for mandatory forfeiture. Id. at 77-78. The factors were rooted in equitable considerations. Id. at 78. It bears noting that there is no suggestion of a constitutional underpinning to the Court's analysis.

Uricoli remained the key case on the exercise of discretion by pension boards and courts considering whether to impose a pension forfeiture for many years. Then, in 2007, the Legislature added N.J.S.A. 43:1-3.1 -- the statute pursuant to which the State seeks forfeiture of defendant's pension.

N.J.S.A. 43:1-3.1(a) provides that

> [a] person who holds or has held any public office, position, or employment, elective or appointive, under

18

the government of this State or any agency or political subdivision thereof, who is convicted of any crime set forth in subsection b. of this section, or of a substantially similar offense under the laws of another state or the United States which would have been such a crime under the laws of this State, which crime or offense involves or touches such office, position or employment, <u>shall forfeit</u> all of the pension or retirement benefit earned as a member of any State or locally-administered pension fund or retirement system in which he participated at the time of the commission of the offense and which covered the office, position or employment involved in the offense.  As used in this section, a crime or offense that "involves or touches such office, position or employment" means that the crime or offense was related directly to the person's performance in, or circumstances flowing from, the specific public office or employment held by the person.

[(emphasis added).]

The next subsection lists the state-law offenses that trigger application of subsection (a).  <u>See</u> N.J.S.A. 43:1-3.1(b)(1) to (23).  Critically, subsection (c)(2) mandates that

[a] court of this State shall enter an order of pension forfeiture pursuant to this section . . . [u]pon application of the county prosecutor or the Attorney General, when the pension forfeiture is based upon a conviction of an offense under the laws of another state or of the United States.  An order of pension forfeiture pursuant to this paragraph shall be deemed to have taken effect on the date the person was found guilty by the trier of fact or pled guilty to the offense.

N.J.S.A. 43:1-3.1 (section 3.1) was in effect in 2012 when defendant's offense occurred.[6]

Also in effect at that time was N.J.S.A 43:1-3. N.J.S.A. 43:1-3(a) provides that "[t]he receipt of a public pension or retirement benefit is hereby expressly conditioned upon the rendering of honorable service by a public officer or employee." Other subsections of section 3 allow for a flexible, discretionary analysis of whether full or partial forfeiture of a pension is an appropriate response to dishonorable conduct.

Subsection (b) provides that

> The board of trustees of any State or locally-administered pension fund or retirement system created under the laws of this State is authorized to order the forfeiture of all or part of the earned service credit or pension or retirement benefit of any member of the fund or system for misconduct occurring during the member's public service which renders the member's service or part thereof dishonorable and to implement any pension forfeiture ordered by a court pursuant to section 2 of L. 2007, c. 49 ([N.J.S.A.] 43:1-3.1).
>
> [N.J.S.A. 43:1-3(b).]

And N.J.S.A. 43:1-3(c) lists factors for a board of trustees to "consider and balance" "[i]n evaluating a member's misconduct to determine whether it

---

[6] See L. 2007, c. 49, § 2. N.J.S.A. 43:1-3.1(b) was amended after December 2012 to add two crimes to the list of predicate offenses that trigger mandatory pension forfeiture. Those offenses are not implicated here.

constitutes a breach of the condition that public service be honorable and whether forfeiture or partial forfeiture of earned service credit or earned pension or retirement benefits is appropriate." Those factors, which reflect the considerations found in case law, see Uricoli, 91 N.J. at 77-78, are:

> (1) the member's length of service;
>
> (2) the basis for retirement;
>
> (3) the extent to which the member's pension has vested;
>
> (4) the duties of the particular member;
>
> (5) the member's public employment history and record covered under the retirement system;
>
> (6) any other public employment or service;
>
> (7) the nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated;
>
> (8) the relationship between the misconduct and the member's public duties;
>
> (9) the quality of moral turpitude or the degree of guilt or culpability, including the member's motives and reasons, personal gain and similar considerations;
>
> (10) the availability and adequacy of other penal sanctions; and
>
> (11) other personal circumstances relating to the member which bear upon the justness of forfeiture.

21

[N.J.S.A. 43:1-3(c)(1) to (11).]

The flexible analysis that the Legislature has left in place within section 3 does not give rise to ambiguity about the legislative scheme. Section 3 makes honorable service a condition of a right to a pension, and section 3.1 makes forfeiture of any right to a pension the result when honorable service is not provided due to conviction of an enumerated offense.

The plain language of section 3.1 expresses an unambiguous legislative intent to make the commission of certain offenses the basis for mandatory and absolute pension forfeiture. The statutory language in section 3.1 leaves no discretion for courts dealing with the entry of a judgment of conviction, whether by trial verdict or plea, for the offenses enumerated in subsection (b). N.J.S.A. 43:1-3.1(a) directs that the convicted individual "shall forfeit all of the pension" (emphasis added). See State v. Thomas, 188 N.J. 137, 149-50 (2006) (explaining that "shall" is typically mandatory).

The factors identified in section 3 apply when mandatory absolute forfeiture is not required by section 3.1. In other words, the factors for consideration contained in N.J.S.A. 43:1-3, which resemble those set forth in Uricoli, apply to public employee misconduct raising honorable service questions outside of circumstances involving convictions for which section 3.1 requires mandatory and absolute forfeiture.

22

Defendant's reliance on Uricoli and its discussion is therefore unavailing. The Legislature has spoken, filling the gap in the pre-2007 pension statutes on which the Uricoli decision was premised. As a result of the adoption of section 3.1, no longer can this Court conclude, as it did in Uricoli, see 91 N.J. at 77, that the Legislature did not, unequivocally and categorically, condition the receipt of a pension on the rendering of uniformly honorable service.

Defendant committed his offense after the 2007 amendment to the pension laws was enacted and, thus, by the time he committed his offense, the Legislature had eliminated all doubt as to its intent that there be a certain category of offenses the commission of which precludes receipt of a publicly funded pension in New Jersey.[7] And to the extent that there is any question that defendant's federal conviction is an analogue to the state offenses listed and, as per the statute's wording, qualifies as the basis for the State's application, we endorse the findings and conclusion of the trial court.

---

[7] It is apparent the Legislature has woven a piece that reiterates that honorable service is a condition of eligibility for pension receipt, N.J.S.A. 43:1-3, and individual pensions remain forfeitable, see N.J.S.A. 43:3C-9.5(d). N.J.S.A. 43:3C-9.5 was amended by chapter 78, Laws of 2011, in connection with the Legislature's discussion of non-forfeitable pension rights. Of particular import is subsection (d), which provides that nothing in that subsection altered the forfeitability of individual pensions. The Legislature took pains to state expressly that individual pensions are still subject to forfeiture.

23

B.

Having determined that forfeiture of a pension is automatic and mandatory upon the commission of certain offenses under section 3.1, it is clear that defendant did not possess a property right in his pension protected by the Federal or State Constitutions.

The Legislature has established that the pre-condition of honorable service to the statutory right is not met when a conviction for an enumerated offense occurs. In such a case, the conditional quasi-contractual right to receive a public pension has not become the "property" of the employee. As the trial court said, one cannot lose what one did not have to begin with. And, without loss, there is no fine for purposes of the Bajakajian analysis.

In short, this case turns on the legislative decision in 2007 to take discretion away from courts and administrative agencies when public employees commit any of the identified offenses. The trial court correctly noted that and faithfully applied the law as written. And, as the court's analysis noted, New Jersey's approach to treat public pensions as quasi-contractual rights rooted in statute, and not as property rights, is consistent with the majority of courts to have addressed this issue. E.g., Hopkins, 150

24

F.3d at 1162; <u>Hames v. City of Miami</u>, 479 F. Supp. 2d 1276 (S.D. Fla. 2007).[8] Those decisions have similarly denied excessive-fine claims on the basis of the first prong of the analysis.  The Appellate Division's reliance on family law cases that have, in that setting, treated pensions as property subject to equitable distribution was misplaced.  So too does the dissent misplace reliance on family law equitable-distribution law.  That case law does not and cannot convert a public pension into a nonforfeitable property right.

That first prong to an excessive-fine analysis -- whether the forfeiture here was a "fine" within the meaning of the Eighth Amendment -- proves to be an impediment that defendant cannot overcome.  We hold that the forfeiture of defendant's pension under section 3.1 does not constitute a fine for purposes of an excessive-fine analysis under the Federal or State Constitutions.

C.

As a result of our conclusion that the forfeiture worked here by operation of N.J.S.A. 43:1-3.1 is not a fine, there is no reason to embark on a constitutional analysis for excessiveness.  The Appellate Division engaged in that endeavor only because it reached a different conclusion on the issue of

---

[8] We note that to the extent that the Appellate Division, and now the dissent, found the reasoning of the <u>Bettencourt</u> decision persuasive, we find that decision to be based on a significantly differently drawn statutory scheme and body of case law.  <u>See</u> 47 N.E.3d at 673-77.

25

whether this forfeiture constitutes a fine. Here, however, we need not reach the question. Accordingly, we decline to review the Appellate Division's analysis for excessiveness and we vacate that portion of its opinion. See, e.g., Menendez, 204 N.J. at 95-96 (noting that courts do not engage in constitutional rulings when unnecessary to our determination of an appeal).

## V.

For the reasons expressed herein, we affirm with modification the Appellate Division judgment. The award of summary judgment to the State is affirmed.


JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN filed a dissent. CHIEF JUSTICE RABNER did not participate.

26

JUSTICE ALBIN, dissenting.

The Eighth Amendment of the United States Constitution prohibits a state from imposing an excessive fine on a person convicted of a crime. In this case, the complete forfeiture of defendant Bennie Anderson's pension for an isolated crime for which he received a probationary sentence and modest fine by a federal court violates the Excessive Fines Clause. In my view, the majority has denied Anderson the protections afforded by the Federal Constitution by failing to call a fine by its true name and by characterizing state law in a way that seemingly evades federal review. I therefore respectfully dissent.

I.

Bennie Anderson, a Vietnam War veteran, served in various municipal positions in Jersey City for thirty-eight and a half years, retiring in March 2017

1

at the age of fifty-nine with an early-service-retirement pension of $60,173.67 per year. Based on the estimate that Anderson would live to the age of eighty-three, his pension at retirement was worth $1,462,220.18.[1]

On November 21, 2017 -- while Anderson was receiving his pension -- he entered a plea of guilty in federal court to the offense of interference with commerce by extortion under color of official right, which carried a maximum sentence of twenty years of imprisonment and a maximum fine of $250,000. 18 U.S.C. §§ 1951(a); 3571(b)(3), (d). In his plea, Anderson took responsibility for accepting a $300 bribe in exchange for altering the tax description of a property for zoning-classification purposes when he worked in the Tax Assessor's Office in December 2012.

On March 5, 2018, a federal district court judge sentenced Anderson to two years of probation and five months of home detention and ordered him to pay a $3,000 fine and a $100 special assessment. As a result of his conviction, the Employees' Retirement System of Jersey City reduced Anderson's pension to $47,918.76 per year.

---

[1] According to the New Jersey Court Rules' Table of Life Expectancies for All Races and Both Sexes, a person who is fifty-nine can expect to live between 23.9 and 24.7 more years, or 24.3 years on average. R. app. I-A. Multiplying $60,173.67 per year by 24.3 years (assuming Anderson lives to the age of eighty-three) yields the value of $1,462,220.18.

In 2019, two years after Anderson's retirement, the Attorney General's Office filed a verified complaint in lieu of prerogative writs in the Superior Court seeking the forfeiture of Anderson's entire pension pursuant to N.J.S.A. 43:1-3.1. That statute provides that a public employee who is convicted of the type of crime that Anderson committed, a crime touching his office, "shall forfeit all of the pension or retirement benefit earned as a member of" a government retirement system. N.J.S.A. 43:1-3.1(a). In accordance with the statute, the court ordered the total forfeiture of Anderson's pension.[2]

The issue before this Court is whether the total forfeiture of Anderson's pension valued at over one million dollars -- in comparison to the probationary sentence and $3,100 financial penalty imposed by the federal court -- violated the Eighth Amendment's prohibition against excessive fines.

II.

A.

The Eighth Amendment's prohibition against excessive fines applies to the states through the Due Process Clause of the Fourteenth Amendment.

---

[2] Anderson's personal contributions into his pension were not forfeited. The parties have not submitted documentation of the value of his contributions or the total value of the forfeiture; however, Anderson's counsel represented at oral argument before this Court that he calculated the forfeiture value as "over a million" dollars.

3

Timbs v. Indiana, 586 U.S. ___, 139 S. Ct. 682, 686-87 (2019). "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." United States v. Bajakajian, 524 U.S. 321, 334 (1998). "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." Ibid. (emphasis added). That inquiry is informed by the history of the Excessive Fines Clause, which "traces its venerable lineage back to at least 1215, when Magna Carta . . . . required that economic sanctions 'be proportioned to the wrong' and 'not be so large as to deprive [an offender] of his livelihood.'" Timbs, 586 U.S. at ___, 139 S. Ct. at 687-88 (alteration in original) (emphasis added) (quoting Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 271 (1989)); accord Bajakajian, 524 U.S. at 335-36.

The majority asserts, however, that the proportionality review mandated by the Eighth Amendment is unnecessary because the forfeiture of Anderson's pension is not a fine -- that because of Anderson's dishonorable service he was never entitled to the pension he was receiving and, accordingly, nothing was taken from him. The meaning of what constitutes a fine for Eighth Amendment and state law purposes therefore is critical to the analysis.

4

Under the Eighth Amendment, a fine is any payment extracted by the government "whether in cash or in kind, as punishment for some offense." Bajakajian, 524 U.S. at 328 (quotation omitted). "Forfeitures -- payments in kind -- are thus 'fines' if they constitute punishment for an offense." Ibid. The "threshold question" for whether a payment constitutes a "fine" is whether "the payment to the government involves turning over 'property' of some kind that once belonged to the defendant." Hopkins v. Okla. Pub. Emps. Ret. Sys., 150 F.3d 1155, 1162 (10th Cir. 1998); accord Pub. Emp. Ret. Admin. Comm'n v. Bettencourt, 47 N.E.3d 667, 672-73 (Mass. 2016). To answer that question, we look to New Jersey law to determine whether Anderson had a cognizable property interest in the pension that was forfeited upon his conviction.

B.

That a pension is a creature of contract does not mean that a public employee does not have a property interest in his pension. A contract may create a property right. See Saginario v. Att'y Gen., 87 N.J. 480, 492 n.3 (1981) (referring to "a statutory or contractual entitlement creating a property interest"); 1 Williston on Contracts § 1:1 (4th ed. 2021) ("Enforceable contract rights are deemed to be property rights.").

Public workers enter into government service with a promise that part of their wages will be deferred until their retirement. That deferred compensation

5

-- like the wages they receive weekly -- is earned every day through their labor.  See, e.g., Burgos v. State, 222 N.J. 175, 182 (2015) ("The individual members of the public pension systems, by their public service, earned this delayed part of their compensation."); Steinmann v. Dep't of the Treasury, 116 N.J. 564, 572 (1989) ("Pensions for public employees . . . . are in the nature of compensation for services previously rendered and act as an inducement to continued and faithful service."  (quoting Geller v. Dep't of the Treasury, 53 N.J. 591, 597-98 (1969))); Spina v. Consol. Police & Firemen's Pension Fund Comm'n, 41 N.J. 391, 401 (1964) (recognizing that a government pension "[i]n part . . . compensates for services already rendered").

That public employees have a property interest in their pensions -- their deferred wages -- is made clear by our family law jurisprudence.  This Court has stated that "a pension is considered property subject to equitable distribution . . . .  [I]t is additional compensation for services rendered for the employer and a right acquired during the marriage."  L.M. v. Div. of Med. Assistance & Health Servs., 140 N.J. 480, 496-97 (1995) (quotation omitted); see also Whitfield v. Whitfield, 222 N.J. Super. 36, 45 (App. Div. 1987) ("[A] pension plan [is] a form of deferred compensation for services rendered.  As a substitute for wages such benefits unquestionably constitute property.").

6

A pension should not constitute property for one purpose but not another -- particularly when the other results in evading the Excessive Fines Clause. The Eighth Amendment is intended "to limit the government's power to punish." Austin v. United States, 509 U.S. 602, 609 (1993). Taking from a retired public employee the pension he is collecting is little different from taking monies from the savings account where he has banked his wages for years.

C.

Anderson had retired and was collecting his pension at the time of his criminal conviction. No one disputes that "honorable service" is a condition for the receipt of one's pension. N.J.S.A. 43:1-3(a) provides that "[t]he receipt of a public pension or retirement benefit is hereby expressly conditioned upon the rendering of honorable service by a public officer or employee." Accordingly, N.J.S.A. 43:1-3 permits the partial or total forfeiture of a public employee's pension for misconduct, depending on a weighing of eleven statutory factors. See N.J.S.A. 43:1-3(b), (c) (authorizing a pension board "to determine whether [an employee's misconduct] constitutes a breach of the condition that public service be honorable and whether forfeiture or partial forfeiture of earned service credit or earned pension or retirement benefits is

7

appropriate" (emphasis added)).  Under N.J.S.A. 43:1-3.1, however, forfeiture of a pension is mandated for certain convictions.

To be clear, it was Anderson's conviction -- a condition subsequent to his retirement on pension -- that permitted the State to subject Anderson's pension to forfeiture.  See 13 Williston on Contracts § 38:9 (4th ed. 2021) (defining "condition subsequent" as a condition that divests a duty to perform a contract after the duty has accrued).  In other words, the conviction, the condition subsequent that triggered the forfeiture, did not arise until after Anderson's pension had vested and he was receiving monthly pension checks.

This issue is not whether Anderson's pension can be forfeited but whether a pension is a species of property, which, when forfeited, is subject to the strictures of the Eighth Amendment.  See Uricoli v. Bd. of Trs., PFRS, 91 N.J. 62, 76 (1982) ("[F]orfeiture -- whether of one's pension or any other property or benefit to which one is otherwise entitled -- is a penalty or a punishment for wrongful conduct."  (emphasis added)).

The Massachusetts Supreme Judicial Court has addressed that issue and held that the forfeiture of a pension resulting from a "violation of the laws applicable to [a public employee's] office or position" exacted a fine within the meaning of the Excessive Fines Clause.  Bettencourt, 47 N.E.3d at 670, 672, 676-77 (quoting Mass. Gen. Laws ch. 32, § 15(4)).  Bettencourt, a police

8

officer, was convicted of twenty-one counts of unauthorized access to a computer system and, at the time, had been a member of the municipal retirement system for over twenty-five years. Id. at 670-71. The public employee retirement administration commission found that his conviction related to his office, mandating forfeiture of his entire pension under the applicable statute. Id. at 671.

The Massachusetts high court held that the forfeiture of the entirety of Bettencourt's pension violated the Eighth Amendment. Id. at 670, 680-81. The court explained "that a public employee who is a member of a retirement system holds an interest in retirement benefits that originates in a 'contract' and in substance amounts to a property right." Id. at 675. According to the court, "it is precisely [that] property interest that the employee is required to forfeit, and the forfeiture effects what is in substance an extraction of payments from the employee to the Commonwealth," rendering it a fine subject to Eighth Amendment review. Id. at 677.

Anderson should stand in no different shoes than Bettencourt. Anderson had a property interest in his pension -- deferred compensation accumulated over thirty-eight and a half years of public employment. The punitive forfeiture of Anderson's pension is a fine for Eighth Amendment purposes. The question remains whether the forfeiture of a pension valued at over one

9

million dollars was so disproportionate to the offense of accepting a $300 bribe that it violates the Excessive Fines Clause.

## III.

## A.

In evaluating whether a forfeiture is "grossly disproportional to the gravity of a defendant's offense" under the Eighth Amendment, Bajakajian, 524 U.S. at 334, courts may consider the following factors: (1) "the nature of the substantive crime"; (2) whether the defendant "fit into the class of persons for whom the [criminal] statute was principally designed"; (3) the maximum sentence and fine "permitted under the statute" and "recommended by the Sentencing Guidelines," as "compare[d] [to] the amount the government sought to forfeit"; and (4) the harm caused by the defendant's conduct, United States v. Cheeseman, 600 F.3d 270, 283-84 (3d Cir. 2010) (citing Bajakajian, 524 U.S. at 337-39); accord United States v. Viloski, 814 F.3d 104, 110 (2d Cir. 2016). At least two federal circuit courts have held that a court may also consider the fine's effect on a person's livelihood. See Viloski, 814 F.3d at 111 ("[H]ostility to livelihood-destroying fines became 'deeply rooted' in Anglo-American constitutional thought and played an important role in shaping the Eighth Amendment."); United States v. Levesque, 546 F.3d 78, 84 (1st Cir. 2008) ("Such ruinous monetary punishments are exactly the sort that

10

motivated the 1689 [English] Bill of Rights and, consequently, the Excessive Fines Clause.").

B.

By the standards governing the Excessive Fines Clause, the complete forfeiture of Anderson's pension -- deferred compensation earned over a career of thirty-eight and a half years and intended to sustain him in his retirement -- was "grossly disproportional" to his offense. That conclusion does not diminish the seriousness of the crime committed by Anderson. By accepting a $300 bribe in return for altering a tax description of a property from a two-unit dwelling to a three-unit dwelling, Anderson betrayed a public trust. The betrayal of that trust, even once in a long career, must be condemned and punished. But the grossly disproportionate punishment here -- a forfeiture likely to cause a ruinous financial hardship in the later years of Anderson's life -- does not fit the crime.

Anderson did not take a series of bribes or engage in financial chicanery over a course of years. He received a benefit of $300 for accepting a single bribe in an almost four-decade career. In Anderson's plea agreement, the government acknowledged that he "clearly demonstrated a recognition and affirmative acceptance of personal responsibility." Although the federal crime to which Anderson pled guilty exposed him to a potential twenty-year

11

maximum prison sentence and a $250,000 maximum fine, and although the sentencing guidelines called for a range of between ten and thirty-seven months of imprisonment, see U.S. Sentencing Comm'n, Guidelines Manual 420 (Nov. 1, 2016), the court sentenced Anderson to only a probationary term with five months of home detention and ordered him to pay only $3,100 in financial penalties. See Bajakajian, 524 U.S. at 339 n.14 ("That the maximum fine and Guideline sentence to which respondent was subject were but a fraction of the penalties authorized . . . show that respondent's culpability relative to other potential violators . . . is small indeed.").

"The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." Id. at 334. Measuring the punishment imposed by the federal court against the forfeiture exacted by the State -- the taking of over one million dollars in pension benefits that Anderson had already begun receiving -- leads to but one conclusion: The forfeiture of Anderson's entire pension was "grossly disproportional" to the crime and therefore violated the Eighth Amendment's Excessive Fines Clause.[3]

---

[3] That is not to say that a lesser forfeiture would not pass constitutional muster. Indeed, the Employees' Retirement System of Jersey City found a reduction of Anderson's pension from $60,173.67 to $47,918.76 per year appropriate. That forfeiture, reducing his pension by $297,794.31 over 24.3 years, might well withstand constitutional scrutiny.

12

## IV.

In my view, a state court's decision cannot evade Eighth Amendment review by calling a fine imposed as punishment by some other name. Anderson had a property interest in his pension, and the State exacted a forfeiture of the entirety of that pension in violation of the Excessive Fines Clause.

I therefore respectfully dissent.